## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| NANCY A. PAWLIKOWSKI, | ) | |
| | ) | No. 08 C 5060 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Pawlikowski seeks judicial review of a final decision denying her application

for Disability Insurance Benefits and Supplemental Security Income under Title II of the Social

Security Act.[1] The parties submitted Cross-Motions for Summary Judgment. Plaintiff seeks a

judgment reversing or remanding the Commissioner's final decision, and the Commissioner seeks

a judgment affirming his decision. For the reasons set forth below, plaintiff's motion is denied [dkt.

21] and defendant's motion is granted [dkt. 23].

PROCEDURAL HISTORY

On August 24, 2006, plaintiff applied for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") alleging a disability period that began November 7, 2005.[2]

She alleged that ankle pain and asthma prompted her to quit working because she could no longer

---

[1] 42 U.S.C. § 405(g).
[2] R. at 110, 116-118.

lift or carry anything over five pounds and had difficulty standing without taking sitting breaks.[3] On October 25, 2006, plaintiff's claim was denied.[4] On December 27, 2006, plaintiff filed a request for reconsideration, which was denied on February 1, 2007.[5] On March 26, 2007, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[6] On November 13, 2007, ALJ Michael McGuire heard plaintiff's case and, on November 20, 2007, issued an unfavorable decision.[7] The ALJ found that plaintiff was not disabled at any time from November 7, 2005 through the date of his decision.[8] On February 5, 2008, plaintiff filed a request for review of the ALJ's decision with the Social Security Administration Appeals Council ("Appeals Council") and submitted additional evidence.[9] On July 17, 2008, the Appeals Council denied plaintiff's request for review. On the same day, the Appeals Council issued an order acknowledging receipt of additional evidence that it made part of the record.[10] Plaintiff then filed a request for the Appeals Council to reopen her case and change its decision, which the Council denied on September 19, 2008.[11] Therefore, the ALJ's decision stands as the final decision of the Commissioner. [12] On February 19, 2009, plaintiff filed this action.

---

[3] R. at 142.
[4] R. at 58, 64.
[5] R. at 63-64.
[6] R. at 72.
[7] R. at 14-22.
[8] R. at 14.
[9] R. at 3-6.
[10] R. at 3.
[11] R. at 1.
[12] *Id.*; 20 C.F.R. §§ 404.1481, 416.981.

FACTS

## A. Introduction and Medical Evidence

This subsection is a brief review of the facts in the medical record that the ALJ reviewed at plaintiff's hearing and considered when rendering his decision. These facts provide a brief summary of plaintiff's medical history and the reasons she applied for DIB and SSI.

Plaintiff was born on October 9, 1957, making her fifty years old on the date the ALJ issued his final decision.[13] She completed high school and later became a certified nursing assistant ("CNA").[14] Between 1977 and 2005, plaintiff was employed as a secretary, a medical assistant, a CNA, and a deli server in a grocery store.[15] In her Disability Report dated August 24, 2006, plaintiff alleged that worsening asthma and arthritis pain forced her to quit her job as a deli server on November 7, 2005 and prevented her from working since then.[16]

On November 8, 2005 plaintiff went to Mercy Hospital and Medical Center complaining of right shoulder and back pain.[17] On November 10, 2005 plaintiff had an x-ray of her cervical spine which revealed degenerative disc disease.[18] From January until March 2006 plaintiff was treated at John H. Stroger Hospital of Cook County ("Stroger Hospital").[19] Plaintiff told her physicians that she had been experiencing neck pain, spasms, tenderness, and right arm pain and numbness since March 2005.[20] On March 1, 2006 a magnetic resonance image ("MRI") of plaintiff's back revealed

---

[13] R. at 54.
[14] R. at 26.
[15] R. at 169.
[16] R. at 142-143.
[17] R. at 202, 232.
[18] R. at 232.
[19] R. at 206; 208-209.
[20] R. at 203.

a minimal degree of retrolisthesis, a narrowing of the vertebral canal that causes pain and a numb sensation.[21] Plaintiff presented with no spinal cord compression and no narrowing of the neural foramina, but did have a mild deformity of the C5 vertebral body.[22] Plaintiff's doctors diagnosed her with cervical radiculpathy, a disease of the nerve roots that causes neck and shoulder pain.[23]

On August 23, 2006, plaintiff was treated at Midwest Orthopaedics at Rush Medical Center for ankle pain by George B. Holmes, M.D., who had last treated her from 1993 to 1995 when he performed surgery on her. Dr. Holmes noted in his report that plaintiff fractured her ankle in 1993 and underwent surgery to correct it.[24] Dr. Holmes opined that plaintiff maintained a good range of motion in her ankle but that she may benefit from a brace and anti-inflammatory medication.[25] He further noted that plaintiff complained of ongoing right shoulder and neck pain and had a history of: sinus problems, asthma, osteoarthritis, elevated blood pressure, bronchitis, irregular heart beat, Hepatitis C, and shortness of breath.[26]

On October 3, 2006, Mahesh Shah, M.D., examined plaintiff at the Social Security Administration's request.[27] He noted that she had a history of: hypertension, asthma, and pain in the neck, lower back, feet, and left ankle.[28] Dr. Shah observed that plaintiff had mild tenderness in the cervical lumbar region but retained a full range of motion and walked without assistive devices.[29] He then diagnosed plaintiff with pain in the neck and lower back and noted that plaintiff's

[21] R. at 208.
[22] *Id.*; Richard Sloane, *The Sloane-Dorland Annotated Medical-Legal Dictionary* 619 (1987).
[23] *Dorland's Illustrated Medical Dictionary* 1324 (29th ed. 2000).
[24] R. at 216-218.
[25] R. at 217.
[26] *Id.*
[27] R. at 238.
[28] *Id.*
[29] R. at 240.

hypertension and asthma were well controlled.[30]

On October 18, 2006, at the Social Security Administration's request, non-examining physician David Bitzer, M.D., prepared a Physical Residual Function Capacity Assessment ("RFCA").[31] He opined that plaintiff could occasionally lift fifty pounds and could frequently lift twenty five pounds; could stand, sit, and walk for six hours in an eight-hour day, and; had limited ability to use foot controls due to decreased range of motion and pain in the left ankle.[32] Dr. Bitzer concluded that plaintiff could frequently climb, kneel, crouch, and crawl, but that her left ankle's decreased range of motion and intermittent numbness of her right arm limited these movements.[33] Finally, Dr. Bitzer opined that, because of her asthma, plaintiff should avoid concentrated exposure to fumes, odors, dusts, and poor ventilation.[34]

On April 12, 2007 plaintiff saw Jose Ayala, M.D., for the first time.[35] On July 6, 2007, Dr. Ayala prepared a second RFCA.[36] At the time, plaintiff was suffering from dizziness, chronic fatigue, shortness of breath, episodes of acute panic attacks, and chest pain.[37] She also had elevated liver enzymes consistent with her Hepatitis C diagnosis.[38] Dr. Ayala opined that plaintiff's impairments had lasted or were expected to last at least twelve months[39] and that her pain would frequently interfere with her attention and concentration.[40] He further concluded that she could sit

---

[30] R. at 241.
[31] R. at 249.
[32] R. at 243.
[33] R. at 244.
[34] R. at 246.
[35] R. at 263.
[36] R. at 267.
[37] R. at 263.
[38] *Id.*
[39] R. at 264.
[40] *Id.*

and stand for four hours in an eight-hour day;[41] could walk unlimited blocks without pain;[42] could

frequently lift less than ten pounds and occasionally ten pounds;[43] could occupy a position that

permitted shifting at will and unscheduled breaks,[44] and; was capable of low stress work.[45] Finally,

Dr. Ayala diagnosed plaintiff with alcohol abuse, hypertension, asthma, panic attacks, and Hepatitis

C.[46] He opined that plaintiff had a poor prognosis.[47]

## B. Additional Evidence Received by the Appeals Council on July 17, 2008

On November 3, 2007, plaintiff received treatment and an echocardiogram at Holy Cross

Hospital.[48] Upon reviewing the echocardiogram, Jacob Mercedita, M.D., opined that plaintiff had

severe pulmonary hypertension, an enlarged right ventricle caused by the hypertension, and trace

pulmonic regurgitation, which is backward flowing of blood into the heart's chambers.[49]

On April 23, 2008 at Stroger Hospital, plaintiff underwent an elective right heart

catheterization, a diagnostic test performed to determine cardiac abnormalities and to determine the

appropriate therapy.[50] On the same day, Francine Touzard Romo, M.D., administered a "walking

test," which plaintiff successfully completed when she walked 600 feet while maintaining a 93

percent oxygen saturation level.[51] A few weeks later, on May 8, 2008, Maria Karm Demori, M.D.,

opined that the catheterization revealed controlled hypertension that produced right ventricular

---

[41] R. at 265.
[42] *Id.*
[43] R. at 266.
[44] R. at 265.
[45] R. at 264.
[46] R. at 263.
[47] R. at 263.
[48] R. at 256.
[49] R. at 256, 284; *Dorland's Illustrated Medical Dictionary* 1511 (29th ed. 2000).
[50] R. at 282; *Dorland's Illustrated Medical Dictionary* 300 (29th ed. 2000).
[51] *Id.*

dysfunction and hypervolemia and diagnosed plaintiff with hypertension, anxiety/depression, and Hepatitis C.[52] In her preliminary report, Dr. Romo observed that, at the time of her treatment at Stroger Hospital, plaintiff was asymptomatic and was not experiencing shortness of breath or chest pain.[53]

## B. The November 13, 2007 Hearing

Plaintiff's hearing before the Social Security Administration occurred on November 13, 2007 in Chicago, Illinois. Plaintiff appeared in person and was represented by her attorney at the time, Sue Halloran. A vocational expert ("VE"), Michelle Peters, also testified.[54] The ALJ began by asking plaintiff's attorney if she had explained the issues presented in the hearing to her client and proceeded to direct questions to plaintiff. Plaintiff first established that she had graduated from high school and became a CNA.[55] The ALJ then asked plaintiff a series of questions about her jobs. Plaintiff responded that as a CNA she had to lift quite a bit, including patients and, as a medical assistant, had always spent a lot of time on her feet at the doctor's office.[56] As a deli server, she lifted twenty pounds at the most.[57]

After plaintiff explained that she had not worked since the date that she became disabled, November 7, 2005, the ALJ asked her a series of questions about her pain.[58] Plaintiff established that her pain is constant, prevents her from sleeping, and registers at a seven on a scale of one to ten.[59]

---

[52] R. at 293-294.
[53] R. at 310.
[54] R. at 25.
[55] R. at 26.
[56] R. at 27-28.
[57] R at 28.
[58] R. at 29.
[59] R. at 30.

She also told the ALJ that she does not have any medication for her pain.[60] Plaintiff explained that while the pain does not travel, numbness does travel down her right arm and hand and sometimes inhibits her ability to write.[61] Plaintiff also explained that lifting two gallons of milk caused pain in her right arm, but that she did not have any trouble lifting up to twenty pounds with her left arm.[62]

The ALJ next asked plaintiff if she was at all limited from completing her household chores and plaintiff responded that she was limited to the point that she had to do them slowly and take frequent breaks to catch her breath.[63] The ALJ asked plaintiff if she ran out of breath due to her asthma and whether or not her asthma was under control without medications. Plaintiff responded that her anxiety attacks were causing the shortness of breath, that they had started a year ago, and that her new medication was lessening their frequency and severity.[64]

Plaintiff then explained that her back pain comes from bending and lifting and that she can only walk half a block and stand for an hour.[65] She also said that sitting did not cause her any discomfort. Plaintiff explained that her difficulty walking was not a result of her ankle fracture and arthritis but, rather, a result of her shortness of breath.[66]

The ALJ then posed a hypothetical to plaintiff: whether she would be able to perform a job in which she did not have to lift or carry anything heavier than twenty pounds, and no more than ten pounds with her right arm, and in which she would have to stand, walk, or sit for six hours of an

---

[60] *Id.*
[61] R. at 30-31.
[62] R. at 32.
[63] R. at 32-33.
[64] R. at 33-34.
[65] R. at 34-35.
[66] R. at 35-36.

eight-hour day but could sit or stand at will.[67] Plaintiff responded that she did not believe she could do that job because she would get out of breath. Plaintiff explained that she does not know what causes her to lose her breath but she thought it was pulmonary hypertension. The ALJ then asked plaintiff whether her hypertension had been "going on forever" and she responded that her pulmonary hypertension was diagnosed in November of 2007 (the same month as the hearing.)[68]

Ms. Halloran, the VE, testified after plaintiff. She noted that she was paid by the Social Security Administration to testify.[69]The VE explained that a CNA is a low-end semiskilled occupation that, according to the Dictionary of Occupational Titles, is medium in physical demand and, as performed by plaintiff, up to heavy in physical demand.[70] She further explained that plaintiff's medical assistant position is classified as a skilled occupation light in physical demand.[71] The ALJ posed a hypothetical to the VE: could a person do any of plaintiff's previous jobs if the person is plaintiff's age, education, vocational background; can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; can sit, walk or sit for six hours out of an eight-hour day, but cannot stand longer than one hour at a time; has the ability to push or pull twenty pounds, but who cannot lift more than twenty pounds with the right arm and; can engage in only occasional reaching with the right upper extremity. The VE responded that no, one could not.[72] Given this hypothetical, the VE opined that there would be 1,500 information clerking positions available to

---

[67] R. at 36.
[68] R. at 37.
[69] R. at 39-40.
[70] R. at 40.
[71] *Id.*
[72] R. at 42.

the person in the Chicago and metropolitan area and 900 telemarketing positions.[73] Finally, plaintiff's attorney asked the VE if plaintiff's neck pain and herniated disks would preclude her from telemarketing positions and the VE responded that it would not.[74]

## C. The ALJ's November 20, 2007 Decision

In his November 20, 2007 decision, the ALJ ruled that plaintiff was not disabled and therefore was not entitled to DIB.[75] The ALJ followed the five-step evaluation process outlined in 20 C.F.R. 404.1520. First, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2006.[76] At step one, the ALJ found that plaintiff met the requirements because she had not engaged in substantial gainful activity since November 7, 2005. At step two, because plaintiff had: degenerative disc disease of the cervical spine with radiculopathy into the right dominant upper extremity, status-post left ankle fracture with residual pain, and asthma, the ALJ determined that she had several severe impairments listed in the Social Security Act and, thus, met the requirements of step two.[77]

Despite finding several severe impairments, the ALJ found that plaintiff did not meet or medically equal any of the listed impairments in Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix 1 because: first, there was no indication that her hypertension would last more than twelve months; second, there was no indication that her panic attacks would last more than twelve months and they were responding favorably to new medication; third, her diagnosis of

---

[73] R. at 44.
[74] R. at 46.
[75] R. at 22.
[76] R. at 16.
[77] R. at 17; radiculopathy is damage to nerve roots that enter or leave the spinal cord. Richard Sloane, *The Sloane-Dorland Annotated Medical-Legal Dictionary* 601 (1987).

Hepatitis C could not be confirmed by a laboratory test and she has lived with it since age fourteen; fourth, there was no evidence of motor loss, muscle weakness, or chronic limitation of motion as a result of her cervical spine disorders; fifth, she had not lost ambulatory function of her left ankle; and finally, her asthma was controlled by her Ventolin inhaler and had not required plaintiff to be hospitalized or frequently visit the emergency room.[78]

The ALJ next determined plaintiff's residual functional capacity ("RFC"). A claimant's RFC indicates what she is capable of doing despite her limitations.[79] Based upon the entire record, the ALJ found that plaintiff had the RFC to perform a range of light work: lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently, as well as, sitting, standing, and walking for six hours of an eight-hour workday. However, she was restricted from standing for more than one hour at a time and lifting or carrying more than ten pounds with her dominant right upper extremity. The ALJ determined that she also should avoid concentrated exposure to pulmonary irritants and would be limited to occasional reaching with the dominant right hand. The ALJ concluded that plaintiff's testimony- that she was capable of doing all household chores, had no problem sitting, could stand for one hour, and could walk half a block- confirmed that, despite her impairments, her remaining capacity had not left her unemployable. Moreover, her medical records indicated that her hypertension and asthma were well controlled by her medication and, additionally, that she maintained full cervical and lumbar range of motion with only mild limitation of her left ankle's mobility.[80]

_____

[78] R. at 18.
[79] 20 C.F.R. § 416.945.
[80] R. at 19.

The ALJ went on to explain that he did not give Dr. Ayala's RFCA the weight he would have otherwise because that assessment focused on the hypertension and panic attacks, which the ALJ did not classify as severe impairments.[81] He also noted his disagreement with the non-examining state agency physician's, Dr. Bitzer's, RFCA because it identified plaintiff's RFC as medium level whereas plaintiff's testimony indicated a light level RFC.[82]

The ALJ next determined that plaintiff met the fourth step because, based on the testimony of the VE, she cannot return to any of her past jobs.[83] Finally, taking into consideration plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, and the testimony of the VE, the ALJ concluded that plaintiff is capable of being employed in the national economy.[84]

## STANDARD OF REVIEW

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual determinations are entitled to deference.[85] The Court will uphold the ALJ's decision when it is free from legal error and is supported by substantial evidence, "such evidence as a reasonable mind might accept as adequate to support a conclusion."[86] Where reasonable minds differ over conflicting evidence the Commissioner is responsible for determining whether a plaintiff is disabled.[87] However, the Commissioner's decision is not entitled to unlimited judicial deference. An ALJ must minimally

---

[81] R. at 20.
[82] R. at 20.
[83] *Id.*
[84] R. at 21; 20 CFR Part 404, Subpart P, Appendix 2.
[85] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[86] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 836, 869 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).
[87] *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

articulate his reasons for crediting or discrediting evidence of disability.[88] The Court conducts a critical review of the evidence and will not uphold the ALJ's decision when it lacks evidentiary support or an adequate discussion of the issues.[89]

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations outline a sequential five-part test for determining whether or not a claimant is disabled. The ALJ must consider: first, whether the claimant is presently engaged in substantial gainful activity; second, whether the claimant has a severe impairment or combination of impairments; third, whether the claimant's impairments meet or equal an impairment listed in the regulations for being severe enough to preclude gainful activity; fourth, whether the claimant is unable to perform her past relevant work; and finally, whether the claimant is unable to perform any other work that exists in significant numbers in the national economy.[90] A finding of disability requires an affirmative answer at either the third or the fifth step, while a negative answer at any step other than three precludes a finding of disability.[91]

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed or remanded because he committed legal errors when he first, improperly rejected the opinion of plaintiff's treating physician and; second, made a credibility determination contrary to Social Security Ruling 96-7p. Additionally, plaintiff argues that the Appeals Council erred when it failed to remand the case after

---

[88] *Clifford*, 227 F.3d at 870 (*quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

[89] *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*quoting Clifford*, 227 F.3d at 869, *and Steele*, 290 F.3d at 940).

[90] *See* 20 C.F.R. §§ 404.1520, 416.920.

[91] *Id.*

acquiring new, additional evidence, and that the Court should now remand plaintiff's case under sentence six of 42 U.S.C. 405(g) ("Sentence Six").

## A. The Weight the ALJ Assigned to Dr. Ayala's Opinion

Plaintiff argues that the ALJ erred at step three of the evaluation because he did not assign controlling weight to the opinion of Dr. Ayala, plaintiff's treating physician. The Commissioner counters that the ALJ properly gave little weight to Dr. Ayalya's assessment, and reasonably concluded that it was not entitled to controlling weight because it was not supported by objective medical evidence.

A treating physician's assessment of a condition's nature and severity is entitled to controlling weight when supported by medical findings and consistent with substantial evidence in the record.[92] However, an ALJ may discount a treating physician's medical opinion if "he 'minimally articulate[s] his reasons for crediting or rejecting the evidence of disability[.]'"[93] When an ALJ gives a treating physician's assessment less than controlling weight, he must do so in accord with 20 C.F.R. 404.1527(d)(2)(i)-(d)(2)(ii), which require the ALJ to consider the treatment relationship in terms of: length, frequency of examination, nature, and extent.[94] Further, 20 C.F.R. 404.1527(d)(4) explains that, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."[95]

The ALJ did not give controlling weight to Dr. Ayala's RFCA because "according to the

---

[92] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (*quoting Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)).
[93] *Clifford,* 227 F.3d at 871.
[94] 20 C.F.R. 404.1527(d)(2)(i)-(d)(2)(ii); *Bauer*, 532 F.3d at 606, 608.
[95] 20 C.F.R. 404.1527(d)(4).

assessment ... Dr. Ayala first saw plaintiff on July 12, 2007- three months ago."[96]  It appears, however, that the ALJ mistakenly calculated the plaintiff's first visit with Dr. Ayala. The record indicates that Dr. Ayala first saw plaintiff on April 12, not July 12, 2007. This was, therefore, seven months before the ALJ wrote his opinion.[97] The ALJ could have been attempting to note that Dr. Ayala first saw plaintiff on April 12, 2007, which was three months before the July 6 RFCA was written. In any case, the mistake does not disrupt the ALJ's conclusion that Dr. Ayala's assessment was entitled to less than controlling weight because it was not entirely consistent with the rest of the record. The ALJ explained that his analysis of the rest of the record led him to conclude that, contrary to Dr. Ayala's RFCA, plaintiff's hypertension and panic attacks were "non-severe impairments" because there was "no indication they will last for twelve continuous months."[98] And, under 20 C.F.R. Sec. 404.1509, unless an impairment will result in death, to be considered "severe" it must last for twelve continuous months.[99] Further, the ALJ concluded that Dr. Ayala's RFCA was inconsistent with plaintiff's testimony.[100] In her testimony, the plaintiff said that her hypertension was "under good control" even without the use of medication.[101] Plaintiff also testified that the medicine she received for her panic attacks since April 2007 produced favorable results. Because it was not entirely consistent with the record, in accord with 20 C.F.R. Sec. 404.1527(d)(4), Dr. Ayala's RFCA was entitled to less than controlling weight. And the ALJ articulated his justification for giving less weight to Dr. Ayala's RFCA and rooted his analysis in the factors listed in 20 C.F.R.

---

[96] R. at 20.
[97] R. at 263.
[98] R. at 20.
[99] 20 C.F.R. § 404.1509; 20 C.F.R. § 416.909.
[100] R. at 18.
[101] R. at 19.

Sec. 404.1527. Therefore, the Court concludes that the ALJ met his burden of "minimally articulat[ing] his reasons for crediting or rejecting the evidence."[102]

## B. The ALJ's Credibility Determination

Next, plaintiff argues that the ALJ's credibility determination was contrary to Social Security Ruling 96-7p because he failed to perform a proper pain assessment and failed to explain the weight he gave to plaintiff's testimony. Conversely, the Commissioner argues that the ALJ's credibility determination was not patently wrong because the ALJ properly considered the objective medical evidence to support plaintiff's allegations and reasonably concluded that plaintiff's subjective allegations were not fully credible.

An ALJ's credibility findings will be affirmed unless they are patently wrong.[103] When determining credibility, the ALJ must consider the entire case record, including claimant's statements as well as the opinions of treating or examining physicians and other persons.[104] According to Social Security Ruling 96-7p, the ALJ's credibility determination "must contain specific reasons for the findings on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[105] Moreover, the ALJ may not ignore the claimant's statements regarding pain and other symptoms or disregard

---

[102] *Clifford,* 227 F.3d at 871.

[103] *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (*citing Pope v. Shalala*, 998 F.2d 478, 487 (7th Cir. 1993)).

[104] SSR 96-7p.

[105] *Id.*

them merely because they are not substantiated by subjective medical evidence.[106]

The ALJ, in accord with 20 C.F.R. 416.929(c)(3) and 404.159(c)(3), properly followed the requirements for evaluating plaintiff's subjective complaints when he considered the following factors and explained how they impacted his analysis: first, the nature, location, onset, radiation, and intensity of the pain; second, precipitating and aggravating factors; third, type, dosage, and effectiveness of pain medication; fourth, treatment for pain relief; fifth, functional restrictions; and finally, claimant's daily activities.[107] The ALJ found that, despite plaintiff's claim to the contrary, her pulmonary hypertension had not significantly limited her activities.[108] He noted plaintiff's testimony that she required frequent breaks due to her shortness of breath.[109] However, he pointed out that plaintiff also testified that she was able to do "all" of her household chores, has no trouble sitting, can stand for one hour, and can walk half a block.[110] He further referenced the recorded finding that plaintiff's hypertension and asthma were found to be "under good control" and only occasionally required the use of a Ventolin inhaler.[111] The ALJ concluded that plaintiff has some limitations. However, the ALJ found that plaintiff's allegations regarding the intensity, persistence, and functionally limiting effects of her pain and other symptoms were not entirely credible.[112] He then concluded that these limitations do not hamper plaintiff's ability to do basic work activities to the extent that plaintiff is disabled.

---

[106] *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (*citing Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)).

[107] *See Schmidt*, 395 F.3d at 747; R. at 17-19; 21.

[108] R. at 19.

[109] R. at 19.

[110] *Id.*

[111] *Id.*

[112] R. at 20.

Further, the ALJ did not, as plaintiff argues, improperly forge a middle ground RFC based on his own beliefs. To the contrary, the ALJ considered the assessments provided by both plaintiff's treating physician, Dr. Ayala, and the non-examining state agency medical consultant, Dr. Bitzer.[113] In addition to giving Dr. Ayala's assessment little weight for the aforementioned reasons, the ALJ discounted portions of Dr. Bitzer's assessment because he found it to be contradictory to additional information provided in plaintiff's hearing.[114] The ALJ performed his duty to create an RFC based on all record evidence, all physicians' assessments of plaintiff's RFC, and plaintiff's subjective statements at the hearing.[115] Contrary to plaintiff's claim that he improperly forged a middle ground based on his own beliefs, the ALJ forged a middle ground based on all objective and subjective information provided in the record and plaintiff's testimony. Therefore, the Court cannot say that he "played doctor."[116]

Given that the ALJ's credibility determination was not patently wrong, is supported by substantial evidence in the record, and is sufficiently detailed to trace its path of reasoning, the Court upholds his final decision.[117]

## C. Remand Under Sentence Six of 42 U.S.C. § 405(g)

Plaintiff argues that the new evidence that she submitted to the Appeals Council warrants a remand under sentence six of 42 U.S.C. § 405(g) ("sentence six") because there is a reasonable

---

[113] *Id.*

[114] *Id.*

[115] *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

[116] *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (explaining that cases in which the Seventh Circuit has reversed are those where an ALJ "played doctor" by failing to address relevant evidence.)

[117] *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

probability that, had he considered it at the hearing, the ALJ would have changed his decision. Plaintiff argues that the ALJ would not have found plaintiff's hypertension to be a non-severe impairment. First, plaintiff asserts that the additional evidence documents plaintiff's complaints about her shortness of breath and inability to sit, stand, and lift weight. Second, plaintiff asserts that, contrary to the ALJs conclusion, the new evidence documents that it had lasted for more than twelve continuous months.[118] The Commissioner argues, in contrast, that a sentence six remand is not proper because there was no reasonable probability that it would have changed the ALJ's conclusion about plaintiff's alleged disability between the alleged onset date of November 7, 2005 and the date of the hearing, November 13, 2007.

Sentence six states, "[t]he court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."[119] Evidence is new if it is "not duplicative, cumulative, or repetitive" and good cause for failing to incorporate it into the record is established when the evidence was "not in existence or available to plaintiff at the time of the administrative proceeding."[120] New evidence is material when there is a reasonable probability the ALJ would have reached a different conclusion had the evidence been considered at the administrative hearing.[121]

Because the evidence plaintiff submitted to the Appeals Council documents medical treatment she received after her hearing, it was not available to her at the time of the administrative

---

[118] *See* 20 C.F.R. § 404.1509.

[119] 20 C.F.R. § 42 U.S.C. 405(g).

[120] 20 C.F.R. § 404.970(b); *Schmidt*, 395 F.3d at 737, 741-742.

[121] *See Schmidt,* 395 F.3d at 742.

proceeding. Therefore, she had good cause for her failure to submit it and it is "new."[122] However, the evidence is not material for purposes of sentence six and there was no reasonable probability that the ALJ would have reached a different conclusion had it been considered at the hearing.[123]

First, the additional evidence plaintiff submitted does not undermine the ALJ's findings regarding the intensity, persistence, and functionally limiting effects of her pain and other symptoms. The new evidence shows that plaintiff successfully completed a walking test when she walked 600 feet while maintaining a 93 percent oxygen saturation level in May 2008.[124] The evidence also reveals that her treating physicians noted that she was asymptomatic, was not experiencing chest pain, and did not report any shortness of breath.[125]Appendix 1 to Subpart P of 20 C.F.R. 404 explains that, "[b]ecause hypertension (high blood pressure) generally causes disability through its effects on other body systems, we will evaluate it by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes) when we consider its effects under the listings."[126] The new evidence does not objectively show that plaintiff's hypertension was affecting "other body systems," nor does it document an increase in plaintiff's pain and symptoms.[127] In fact, it objectively shows that plaintiff was asymptomatic and was not experiencing shortness of breath or chest pain.[128]

Finally, the Seventh Circuit has held that remand is proper upon receipt of additional evidence when there was a "paucity of evidence" before the ALJ, when the majority of the new evidence was not presented to the ALJ at or before the hearing, or in "admittedly unusual

---

[122] *See id*. at 742.

[123] *See id.*.

[124] R. at 310.

[125] R. at 293.

[126] 20 C.F.R. § 404, Subpt. P, App. 1.

[127] *See id.*

[128] R. at 293.

circumstances."[129] While the new evidence further documents plaintiff's pulmonary hypertension, it does not add enough to the record to conclude that the ALJ was unaware of the majority of the evidence when he rendered his final decision. The ALJ had more than a paucity of evidence before him about plaintiff's hypertension and associated conditions. Plaintiff has not, therefore, met her burden of establishing a reasonable probability that the newly submitted evidence would change the ALJ's determination that her hypertension was a non-severe impairment.

Despite plaintiff's argument to the contrary, the new evidence submitted to the Appeals Council did not create a reasonable probability that the ALJ would have reached a different conclusion had it been considered at the time of her hearing. The new evidence does not contradict the ALJ's findings regarding plaintiff's credibility. Therefore, the Court finds the Council did not commit a reversible error that would warrant a sentence six remand.

## D. The Appeals Council Denial of Review

Finally, plaintiff argues that the Appeals Council erred when it received additional medical evidence from plaintiff and denied her request for review of the ALJ's decision. Plaintiff argues that the requirements of the Social Security Administration, Office of Disability Adjudication and Review, *Hearings, Appeals, and Litigation Law Manual*, ("HALLEX") I-3-36 and 20 C.F.R. Sec. 404.970 mandate a reversal of the Appeals Council's decision not to reopen and remand plaintiff's case when it received the additional evidence.[130] The Commissioner contends that the Appeals Council, however, did not commit an error because the newly submitted evidence was not material

---

[129] *See Sears v. Bowen*, 840 F.2d 394, 397, 401 (7th Cir. 1988); *Nelson*, 855 F.2d at 508.

[130] 20 C.F.R. § 404.970; Soc. Security Admin. Office of Disability Adjudication and Review, *Hearings, Appeals, and Litigation Law Manual* (HALLEX) Vol. 1, Transmittal I-3-36 (2005).

to the ALJ's decision.

The Seventh Circuit has held that "the Appeals Council may deny review of an administrative law judge's decision without articulating its reasons."[131] Additionally, in the absence of any error of law, "the Council's decision whether to review is discretionary and unreviewable," and "the ALJ's decision becomes the final decision reviewed...."[132]

The Appeals Council's reviewing process is governed by 20 C.F.R. Sec. 404.970(b) which states:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.[133]

Further, HALLEX, section I-3-5-20 provides that, "evidence is new when it is not duplicative, cumulative, or repetitive. It is material when it affects the ALJ's findings or conclusions... and relates ...to the period on or before the date of the ALJ's decision."[134]

The Appeals Council did not commit legal error when it denied plaintiff's request for review. First, the Appeals Council did not refuse to consider plaintiff's additional evidence and, instead, made it part of the record.[135] So plaintiffs argument that the Appeals Council did not find the

---

[131] *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1991).
[132] *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) (*citing Damato*, 945 F.2d at 988).
[133] 20 C.F.R. § 404.976(b).
[134] Soc. Security Admin. Office of Disability Adjudication and Review, *Hearings, Appeals, and Litigation Law Manual* (HALLEX) Vol. 1, Transmittal I-3-5-20 (2005).
[135] R. at 6.

additional records to be "material" is without merit because, "[i]f the Appeals Council were to find additional evidence to be immaterial, then it would refuse to even consider the evidence in the first place."[136] Second, in accord with Sec. 407.970(b), it "evaluate[d] the entire record including the new and material evidence submitted.."[137] Finally, the Appeals Council found that the new evidence would not affect the ALJ's decision and, therefore, it did not warrant review.[138] We, thus, uphold the Appeals Council's denial of plaintiff's request for review of the ALJ's decision.[139]

---

[136] *Burling v. Barnhart*, 2002 WL 731129, at *9.
[137] 20 C.F.R. § 404.970(b).
[138] *Id.*
[139] *See Perkins*, 107 F.3d at 1294.

CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's November 20, 2007 decision is supported by substantial evidence and the Appeals Council did not err when it refused to reopen and remand the case. Accordingly, the Court denies plaintiff's Motion for Summary Judgment [dkt 21] and grants the Commissioner's Motion for Summary Judgment [dkt 23].

**IT IS SO ORDERED**

**ENTERED: August 17, 2009**  _____

**Susan E. Cox**
**UNITED STATES MAGISTRATE JUDGE**